## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD TRONG ONG, | : | MOTION TO VACATE |
| BOP ID 03719-049, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:12-CV-3442-RWS-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:05-CR-543-20-RWS-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on federal inmate Richard Trong Ong's Omnibus Motion [1657] and Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [1668], the government's Response [1692], and Ong's Reply [1700].   In sum:   Ong contends that both his appointed trial counsel and retained appellate counsel provided constitutionally ineffective assistance [1668 at 8-14].   For the following reasons, the undersigned recommends that Ong's motions be denied and that a Certificate of Appealability be denied.

During the course of Ong's four-day trial, the government established the following facts [1402-1405 (trial transcripts) ].   In 2004 and 2005, the Atlanta and Boston offices of the Drug Enforcement Agency ("DEA") were conducting independent investigations of drug trafficking within their respective jurisdictions.   These investigations intersected in late summer

2005.  At that time, DEA agents in Atlanta were monitoring and recording calls made to and from Chiem Mach, a large-scale ecstasy and marijuana trafficker then operating out of Atlanta.  And, on July 27, 2005, DEA agents in Atlanta intercepted a call in which Mach made arrangements to fly to Boston to meet face-to-face with "Ken," a distributor to whom he had shipped tens of thousands of ecstasy tablets in June 2005.

In response to that intercept, DEA agents in Atlanta followed Mach to the airport on August 4, 2005, when he flew to the meeting in Boston, and DEA agents in Boston took over physical surveillance after Mach landed. DEA agents in Atlanta continued to monitor and record Mach's calls, and also began to relay information to DEA agents in Boston in real-time to assist with the ongoing surveillance of Mach.

In an intercepted call between Mach and "Ken" on August 5, 2005, "Ken" stated that he would get off work at midnight and meet Mach at a restaurant in Boston's Chinatown soon afterward.  Ong's work records confirmed that he left work at midnight on August 5, and phone company records revealed that the number Mach had called to reach "Ken" on August 5 was registered to "Joanna Ong."

2

Massachusetts State Police Officer David Jung, then assigned to a DEA task force in Boston, staked out the Chinatown restaurant and observed Mach enter at 10:30 p.m.  At 12:19 a.m., Officer Jung saw Ong enter the restaurant while talking on his cell phone – at the same time Mach received a phone call from "Ken" stating that he had arrived. Roughly five minutes later, Officer Jung saw Mach and Ong leave the restaurant together and drive away in a silver BMW, which was registered to Ong.

On August 7, 2015, agents in Atlanta intercepted a call from Mach to "Ken" (again, at the number registered to "Joanna Ong") stating that one of his couriers would be arriving in Boston with another drug shipment and arranging a noon meeting.  At noon, Officer Jung observed Ong arrive in his silver BMW at the hotel in which Mach was staying.  And, a few minutes later, Officer Jung saw Ong and Mach leave in Ong's BMW.  Mach then received a phone call from Sokhom Sim, one of his couriers, asking for directions.  Mach gave the phone to "Ken" – while Mach and Ong were riding together in Ong's car – and "Ken" gave Sim directions.  Officer Jung followed Mach, Ong, and others to a rendezvous with Sim in a suburb of

Boston.  Officer Jung identified Ong at trial as the person he had repeatedly seen meeting with and traveling with Mach.

Sim testified that after he met up with Mach, "Ken" and the others, he followed "two kids" working for "Ken" to "Ken's" home, where the drugs were retrieved from the gas tank of his car.  And Sim testified that he received payment at the same home the following day, hiding the cash in the gas tank of his car.  Sim further testified that he had also earlier delivered drugs sent by Mach to "Ken" in June 2005, and that in the course of working for Mach, he had smuggled ecstasy into the United States from Canada on five occasions, making two deliveries to Boston and three to Atlanta.  Sim recalled meeting "Ken" during the delivery in August 2005, and at trial positively identified Ong as "Ken."

On August 8, 2005, Joseph Sam – who was independently under surveillance by the DEA in Boston – was arrested attempting to deliver 10,000 ecstasy pills.  Sam immediately cooperated with law enforcement, identified "Ken" as his boss, called "Ken" on the same number that Mach had used to reach Ong, and identified Ong's house as "Ken's."  At trial, Sam also positively identified Ong as his boss, "Ken."

4

In addition, the government introduced evidence that a different cell phone – one registered to Ong in his own name – was present in Montreal, Canada in early August 2005, over a series of days when "Ken" was telling Mach in intercepted conversations that he was in Montreal.   And the government introduced evidence through a DEA chemist demonstrating that the ecstasy tablets that Sim delivered on behalf of Mach to "Ken" also contained methamphetamine, which was significant for purposes of sentencing.

Ong was arrested in Boston on August 9, 2005, and indicted in Atlanta in November 2005 [1].   Ong was ultimately tried on a Second Superseding Indictment that charged him in Count One with conspiring with Mach, Sim, and others to distribute ecstasy, methamphetamine, and marijuana "in the Northern District of Georgia, and elsewhere" [640 at 2].

Unlike most other defendants in the case, Ong did not plead guilty, and he was tried over a five-day period from August 18 to August 22, 2008 [1402-1405 (trial transcripts) ].   Because Ong was tried alone, he was the sole focus of the trial, and there is no likelihood that the jury misattributed to him evidence offered with respect to a co-defendant.

The government offered the evidence summarized above through (A) the DEA agents primarily responsible for the investigation and surveillance of Mach and Ong, (B) the DEA agent who arrested Ong, (C) the DEA chemist, (D) Sim and Sam as cooperating witnesses, (E) a T-Mobile employee as a records custodian, and (F) recordings of the intercepted calls. The government argued – and the jury was persuaded – that this evidence linked Ong to Mach's Atlanta-based drug trafficking conspiracy beyond a reasonable doubt.

Ong argued, through counsel, that he was not a drug dealer and that he was not "Ken," but rather the victim of misidentification. Through his former wife, his wife, and his children's babysitter, Ong identified his "friend" and tenant – Li Hou – as "Ken." Each of Ong's witnesses stated that it was Li Hou's voice – not Ong's – on the recorded calls, and two of them stated that Li Hou was known as "Ken." Ong also offered the testimony of a government contractor who stated that she could not say with certainty that a voice exemplar given by Ong matched "Ken's" voice. Ong further asserted through counsel that he was a "hard-working family man," and he argued that the absence of any surveillance photographs capturing his meetings with Mach undermined the government's case.

After considering the facts and weighing the credibility of the witnesses, the jury took roughly three and one-half hours to find Ong guilty [1405 at 95 ("Jury retired at 1:00 p.m.") & 99 ("Jury returned at 4:37 p.m.")].

Ong then hired new appellate counsel to replace his appointed trial counsel.  The single issue Ong's retained counsel presented on appeal was that venue was improper in the Northern District of Georgia.  The United States Court of Appeals for the Eleventh Circuit summarily dismissed that argument.

Ong now concedes in his § 2255 filings that he did in fact buy and distribute large quantities of ecstasy [1700 at 11], that "he was, at one point, referred to as 'Ken'" [*id.*], and that "he met with Mach in Boston" [*id.* at 5]. This last point is one he cannot reasonably continue to contest, because his wife testified at trial that she specifically remembered accompanying Ong to meet and dine with Mach in August 2005 at the restaurant Officer Jung had under surveillance.

Ong contends, however, that "the record establishes[] that there was more than one 'Ken'" and states that it is his "position . . . that he never had a business relationship with Mach and . . . could not possibly have been

7

involved in Mach's Atlanta conspiracy" [*id.*].  Specifically, Ong argues that

he is entitled to have his conviction vacated because:

>       (1)  his trial counsel "did not offer the effective assistance of
> [c]ounsel . . . when she failed to move the Court via a specific Rule 29
> motion for a judgment of acquittal based upon the United States's
> failure to properly establish venue in the Northern District of
> Georgia" [1668 at 8];

>       (2) his trial counsel "did not offer the effective assistance of
> [c]ounsel . . . when she failed to argue that the United States
> committed a material variance between the [I]ndictment and the
> evidence presented at [t]rial" [*id.* at 9];

>       (3)  his trial counsel "did not offer the effective assistance of
> [c]ounsel . . . when she failed to investigate [A] whether or not venue
> was proper in the Northern District of Georgia; [B] Li Hou;
> [C] property records for Middlesex County, Massachusetts; and
> [D] the origin of the [ecstasy] confiscated by law enforcement" [*id.* at
> 11];

>       (4)  his trial counsel "did not offer the effective assistance of
> [c]ounsel . . . when she failed to properly explain the consequences of
> going to trial and further failed to engage the United States in plea
> negotiations" [*id.* at 12]; and

>       (5)  his appellate counsel "did not offer the effective assistance
> of [c]ounsel . . . when he failed to properly consult with Ong and/or
> review the [t]rial record prior to filing [Ong's] Opening Brief" [*id.* at
> 14].

Sixth Amendment "ineffective assistance of counsel" claims are

judged in light of the standards set forth in *Strickland v. Washington*, 466

U.S. 668 (1984), and the multitude of subsequent cases applying and

explaining those standards.  To prevail, Ong must make "a showing that 'counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'"  *Woods v. Donald*, 135 S. Ct. 1372, 1375 (2015) (quoting *Strickland*, 488 U.S. at 687)).  When reviewing an ineffective-assistance-of-counsel claim, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690)).  And prejudice exists only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under these standards, Ong's § 2255 motion is plainly meritless.

First, Ong's trial counsel was not ineffective for failing to make a Rule 29 motion specifically challenging venue.  While it is true that "venue is an essential element of the government's proof at trial," *United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010), "to sufficiently prove venue, the government need only show, by a preponderance of the evidence, that an overt act was committed in the district of prosecution," *United States v. Barnes*, 681 F.2d 717, 722 (11th Cir. 1982), and "the overt act may be committed by any conspirator . . . ," *United States v. Bradley*, 644 F.3d

1213, 1255 n.87 (11th Cir 2011).  In determining whether the prosecution met this burden, the Court "'view[s] the evidence in the light most favorable to the government and mak[es] all reasonable inferences and credibility choices in favor of the jury verdict.'" *Bradley*, 644 F.3d at 1251 (quoting *United States v. Stickle*, 454 F.3d 1265, 1270 (11th Cir. 2006).

While it may be true, as Ong contends, that "no action was committed by Ong in the Northern District of Georgia" [1668 at 35], he was subject to prosecution here because his co-conspirators engaged in at least one overt act in furtherance of the conspiracy in the Northern District of Georgia.  In fact, his co-conspirators engaged in multiple overt acts, including, for example:  Mach's July 27, 2005, phone call to "Ken"; Mach's boarding of a flight originating in Atlanta on August 4, 2005, to travel to Boston to meet "Ken"; and Sim's deliveries of ecstasy in Atlanta on behalf of the conspiracy.  Each act alone was adequate to establish venue to prosecute Ong in this Court.

Because a Rule 29 motion to challenge venue would have been futile, Ong's counsel did not perform deficiently when she did not make that motion, and Ong was not prejudiced because the motion would have been denied.  *See generally Freeman v. Att'y Gen, Fla.*, 536 F.3d 1225, 1233

(11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

Second, Ong's counsel did not provide ineffective assistance when she did not argue that there was a material variance between the Second Superseding Indictment and the government's evidence. Here, what Ong is arguing is that *he* conspired with Mach to distribute ecstasy only in New England and that this sub-conspiracy must be treated as one separate and distinct from *Mach's* broader Atlanta-based drug-trafficking conspiracy [1668 at 38]. But this misunderstands what the government had to prove. "A single conspiracy may be found where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal." *United States v. Taylor*, 17 F.3d 333, 337 (11th Cir. 1994) (internal quotation marks and citations omitted). Indeed,

> It is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements. This does not mean, however, that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan.

*United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997) (internal quotation marks and citations omitted). "It is irrelevant that particular

11

conspirators may not have known other conspirators or may not have participated in every stage of the conspiracy; all that the government must prove is an agreement or common purpose to violate the law and the intentional joining in this goal by co-conspirators." *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007) (alterations omitted).

In this case, the government adequately proved that Mach was the "key man," that his actions in recruiting Ong and delivering ecstasy to Ong for distribution in Boston furthered an overarching scheme to expand Mach's drug-trafficking business as broadly as possible, and that Ong intentionally joined Mach's conspiracy. Moreover, Ong's conviction reflects the jury's "implicit findings that the evidence proved the existence of the single conspiracy alleged." *United States v. Khoury*, 901 F.2d 948, 956 (11th Cir. 1990).

Third, Ong's contention that his trial counsel should have researched more thoroughly issues relating to (A) venue, (B) Li Hou, (C) local property records, and (D) the "origin of the [ecstasy]" is meritless as well. As discussed above, venue was proper in the Northern District of Georgia, and further research would not have altered that fact. Trial counsel presented Li Hou as "Ken" at trial, and the jury disbelieved that defense. Nothing Ong

points to now would have materially strengthened the argument – even assuming that Ong is truthfully asserting that Li Hou is actually "Sun Srey," a notorious international criminal [1668 at 43-44] – especially in light of the overwhelming evidence that Ong was "Ken," including the consistent eyewitness and voice identifications of Ong as "Ken" by Officer Jung, Sim, and Sam, as well as his own wife's testimony that she and Ong dined with Mach in August 2005. Local property records would at best have permitted Ong's trial counsel to cast a shadow over Sim's testimony that he delivered drugs to the Boston suburb of Lowell, while inviting unhelpful redirect examination that would have confirmed that the delivery actually occurred at a house owned by Ong in the Boston suburb of Lynn. And the "origin of the [ecstasy]" – namely the tablets seized from Joseph Sam that were determined to contain both ecstasy and methamphetamine – was proven at trial to be Ong (and Ong's source of supply with respect to those tablets was proven to be Mach). Ong does not suggest how any further investigation might reasonably have altered that conclusion. Simply put, even assuming that trial counsel should have further investigated all of these issues, there is no reasonable probability that they might – even collectively – have

altered the outcome of Ong's trial or his sentencing. Thus, Ong suffered no prejudice. *See Strickland*, 466 U.S. at 694.

Fourth, Ong's contention that his trial counsel's "failure to adequately explain the consequences of going to trial" and "failure to adequately engage the United States in plea negotiations" amounted to ineffective assistance is also without merit. As the record in this case makes plain, Ong's trial counsel did, in fact, attempt to engage the government in plea negotiations [1235 at 1] & [1253]. Moreover, as Ong's § 2255 motion continues to make plain, he remains convinced – despite his conviction – that he was entitled to an acquittal because the United States could not prosecute him in the Northern District of Georgia. Finally, Ong admits that he refused his counsel's recommendation that he plead guilty "straight up" [1668 at 50]. That Ong made the wrong decision does not mean that he made an uninformed decision, and it certainly does not mean that his trial counsel provided ineffective assistance. The allegations in Ong's § 2255 motion are inadequate even to suggest that there is a "reasonable probability [that he] would have accepted [a] plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Fifth, and finally, Ong's contention that his retained appellate counsel should have raised a "material variance" argument on appeal is also meritless.  As discussed above, there was no material variance between the Second Superseding Indictment and the proof presented at trial.  The government proved and the jury found that Ong was a participant in a single conspiracy with Mach and others.  Appellate counsel cannot be ineffective for failing to raise on appeal a meritless argument, and this is the only argument that Ong suggests he should have made.  *See Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of . . . appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective assistance."); *United States v. Nyhuis*, 211 F.3d 1340, 1346 (11th Cir. 2000) (same).

Because the record in this case demonstrates that Ong is entitled to no relief on any ground that he has raised, no evidentiary hearing is warranted.  *See generally Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

For the foregoing reasons, the undersigned **RECOMMENDS** that Ong's Omnibus Motion [1657] and § 2255 motion [1668] be **DENIED**.  The undersigned further **RECOMMENDS** that a Certificate of Appealability be

15

**DENIED** because Ong has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

**SO RECOMMENDED AND DIRECTED**, this 20th day of July, 2015.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE